## Martin v. Martin.

November 15, 1949.

T. E. Moore, Jr. and French Hawk for appellant.

Clark Pratt for appellee.

JUDGE KNIGHT—Affirming.

Appellee brought this suit for divorce against appellant on the ground of cruel treatment for more than six months' duration. In addition to the absolute divorce, he prayed for custody of their infant daughter eleven years of age. The judgment of the lower court granted him the divorce, dismissed appellant's counterclaim for divorce from him on the same grounds, and for alimony and restoration of certain property she claimed. Appellant was given custody of the infant daughter and the sum of $25 per month for the maintenance of the child. Each party was adjudged to pay his and her own costs. Appellant appeals from that judgment.

Bruce Martin was married to Maudie Martin on November 6, 1924, and they lived together until shortly before this suit was filed on September 24, 1947. He is now sixty years of age and she is forty-three. He had been previously married and had five children, all daughters, by his first wife. Two children were born to this marriage, a daughter Ogal, now twenty-two years of age, and Inez, now eleven years of age.

The record in the case is voluminous, consisting of over 600 pages of testimony, all of it, as is usual in such cases, highly conflicting. Whatever testimony was produced on one side was met with denial on the other and in the mass of exaggeration, half truths and recriminations, it is difficult, if not impossible, to arrive at the truth. It would serve no useful purpose to detail the testimony by which the Chancellor arrived at the conclusion that appellee was entitled to the divorce and, of course, we cannot alter his decision insofar as it affects the divorce, but can only consider it as it affects the property rights of the parties and her right to alimony and the costs of the litigation.

From a careful reading of all the testimony the picture we get is that appellant, though an uneducated woman, is a woman of considerable energy. This was

manifested by the fact that in addition to the fact that she has been postmistress of the small fourth class post office of Hall, Ky. for the past twenty years she has kept house and raised her two children and also the five children of her husband by a previous marriage until they married and went out into the world on their own. She and her husband and these children lived on his mountain farm of about 200 acres and if she did not do a large part of the man's work on the farm, as she claims she did, she appears to have done practically all of the woman's work usually done on a farm, such as raising the chickens, making and cultivating the garden and marketing the produce therefrom, doing the cooking and family washing. At times she milked the cows, fed the stock, gathered and marketed the fruit from the orchard and even kept a few boarders during part of the time and did many other essential chores that have to be done on a farm. Yet with this virtue of unbounded energy appellant seems to have had along with it a high temper, a harsh disposition and a determination to have her way in doing the things she wanted done and in the way she wanted them done. She seems to have been the boss around the home and made life unhappy for her husband by her threats and outbursts of temper. There seems to have been a mutual dislike between appellant and Annie, one of appellee's daughters by his first wife, and this dislike extended to the latter's husband. The bitterness resulting from the clashes between Annie and appellant often broke around appellee's head and added fuel to the flame which enveloped him in the domestic trouble with his wife.

On the whole the record does not disclose that appellee unreasonably or deliberately provoked appellant into her fits of temper or that he instigated or provoked her conduct. From the record appellee appears to be a fairly well educated man having been a teacher for more than thirty years. He was tax commissioner of his county for a term of four years and has twice been parole officer under the Kentucky Welfare Department, a position he now holds. From the record as a whole, we get the picture of him as a man of mild temper, even disposition and generally well thought of in his community.

Without detailing the evidence, which would be of

no interest or value to the legal profession and with which the parties to this litigation are already familiar, and all of which evidence we have carefully read and considered, we are of the opinion that there was sufficient ground for the lower court to adjudge that appellee was entitled to a divorce from appellant and to justify his denial of divorce to her and to dismiss her counterclaim. Certainly the conflicting evidence raises no more than a doubt as to the correctness of the Chancellor's decision on the factual question involved, and under these circumstances we do not feel justified in disturbing his decision that the husband rather than the wife was entitled to the divorce. Evans v. Evans, 247 Ky. 1, 56 S. W. 2d 547.

It follows that the wife, not being entitled to a divorce, is not entitled to alimony, Bell v. Bell, 299 Ky. 7, 184 S. W. 2d 124; Damron v. Damron, 301 Ky. 649, 192 S. W. 2d 473, and cases therein cited. Neither is she entitled to her costs if she has ample estate to pay the costs. KRS 453.120. On this question there is also a sharp conflict in the evidence. According to her testimony, she has only "a mule, a cow and a hog," in addition to her salary of $316.80 per annum as postmistress. According to his testimony, she has "close to $5000" which she has obtained from him during the time they were married, including $1,000 for timber he sold from his place, and about $1,750 which he paid her after the separation in payment of a note and interest thereon for money which he claims was his, but for which she required him to execute a note when he obtained it from her. According to his testimony, she bought a farm for $1,900 after the separation and also has cash in bank of $1,600, both of which he says have been put in the name of their oldest daughter, Ogal, who has sided with her mother in this controversy. Appellant denies that she owns the $1,900 farm or the bank account of $1,600 and says they belong to the daughter. In view of this conflict in the testimony, we cannot say that the Chancellor erred in his finding of fact that the wife had ample estate out of which to pay her costs. Evans v. Evans, supra, and Whisman v. Whisman, 228 Ky. 277, 14 S. W. 2d 1061.

Upon consideration of the whole case, we are of the opinion that the judgment should be and it is affirmed.